J-A11027-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
ANDRE WARE :
:
Appellant : No. 1134 EDA 2021

Appeal from the PCRA Order Entered May 10, 2021
In the Court of Common Pleas of Philadelphia County
Criminal Division at Nos: CP-51-CR-0002350-2012,
CP-51-CR-0012132-2011

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
ANDRE WARE :
:
Appellant : No. 1135 EDA 2021

Appeal from the PCRA Order Entered May 10, 2021
In the Court of Common Pleas of Philadelphia County
Criminal Division at Nos: CP-51-CR-0002350-2012,
CP-51-CR-0012132-2011

BEFORE: BOWES, J., STABILE, J., and McLAUGHLIN, J.

MEMORANDUM BY STABILE, J.: **FILED MAY 24, 2022**

Appellant, Andre Ware, appeals from the May 10, 2021 orders entered in the Court of Common Pleas of Philadelphia County, denying his petition for collateral relief filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546. Appellant contends the PCRA court erred in several

respects, including dismissal of various **Brady**[1] claims, and improperly dismissed his PCRA petition without an evidentiary hearing. Following review, we affirm.

On direct appeal, this Court summarized the underlying facts as follows:

On April 20, 2011, Rahfee Yates ("Yates"), Shalik Fogle ("Fogle"), and [fourteen-year-old B.D. ("B.D.")] were sitting outside of a barbershop located at 1839 South Sixth Street in Philadelphia. Yates and Fogle knew one another, but neither was familiar with [B.D.]. At around 1:45 p.m., two men approached the barbershop wearing hoods and holding guns and began shooting Yates several times at close range. The two men also hit [B.D.] with their gunfire. [B.D.] was close enough to the two men to touch them. While [B.D.] survived his injuries, Yates died from the injuries that he sustained from his gunshot wounds.

Fogle escaped the incident unharmed. When police questioned him immediately after the shooting, he stated that he was unable to identify the two individuals who shot Yates and [B.D.]. However, a few weeks later on April 27, 2011, police arrested Fogle on unrelated drug charges. At that time, Fogle volunteered information about Yates's murder, identifying Ware as one of the individuals who shot Yates and [B.D.]. On April 28, 2011, [B.D.] identified Ware in a photo array.

On June 15, 2011, police were investigating a parked vehicle when they viewed Ware and another individual exit the parked vehicle and throw two handguns into a small passageway. After a physical struggle, police arrested Ware and charged him with the shootings. Police recovered both handguns, but neither of the guns recovered matched the ballistics evidence from Yates's murder.

Ware's jury trial began on March 18, 2013. On March 22, 2013, the jury found Ware guilty of [first-degree murder, conspiracy, possessing instruments of crime, recklessly endangering another person, carrying a firearm without a license, and resisting arrest]. The trial court sentenced Ware to life imprisonment without the

_____

[1] **Brady v. Maryland**, 373 U.S. 83, 83 S.Ct. 1194 (1963).

possibility of parole. On March 26, 2013, Ware filed a post-sentence motion that the trial court denied on April 1, 2013.

*Commonwealth v. Ware*, 1273 EDA 2013, unpublished memorandum at 1-3 (Pa. Super. filed April 8, 2014) (references to notes of testimony and footnote omitted). Following our April 8, 2014 affirmance of his judgment of sentence, Appellant filed a petition for allowance of appeal with our Supreme Court. The Supreme Court denied his petition on November 18, 2014.

Appellant filed a first, timely PCRA petition on July 17, 2015. The PCRA court dismissed the petition on October 17, 2016; this Court affirmed on November 2, 2017; and our Supreme Court denied his petition for allowance of appeal on June 26, 2018.

Appellant's instant petition was filed on July 24, 2020. Counsel filed corrected and supplemental petitions, details of which will be set forth when Appellant's particular claims are addressed herein. The Commonwealth responded and Appellant replied to the Commonwealth's submissions. At the conclusion of a hearing on March 25, 2021, the PCRA court issued a Rule 907 Notice of its intent to dismiss the petition without a hearing. On April 27, 2021, Appellant filed a supplemental petition and, on May 5, 2021, he filed a response to the Rule 907 Notice. The court conducted an additional hearing

on May 6, 2021. On May 10, 2021, the PCRA court entered an Order and

Opinion dismissing Appellant's petition. This timely appeal followed.[2]

Appellant asks this Court to consider eight issues, which we have

reordered for ease of discussion as follows:

1. Was Appellant denied a fair trial where the Commonwealth failed to disclose that Detective Philip Nordo, in numerous cases, had sexually assaulted, intimidated, threatened, bribed, and coerced witnesses into giving false statements, in violation of the Fourteenth Amendment[] to the United States Constitution and Article I, §§ 1 and 26 of the Pennsylvania Constitution?

2. Was Appellant denied a fair trial where the Commonwealth suppressed evidence that in a comparable plain view seizure, Officer Angel Ortiz falsified police reports, mishandled evidence, and conspired with another officer to defraud the court by knowingly submitting a materially false affidavit of probable cause, and where counsel was ineffective for failing to uncover and utilize this evidence, in violation of the Sixth and Fourteenth Amendments to the United States Constitution and Article 1, §§ 1, 9 and 26 of the Pennsylvania Constitution?

3. Was Appellant denied a fair trial where the Commonwealth failed to disclose it coached B.D.'s alleged hospital-bed identification of Appellant, including suggesting the perpetrator was in the "top row" of the photo array, in violation of the Fourteenth Amendment to the United States Constitution and Article I, §§ 1 and 26 of the Pennsylvania Constitution?

4. Was Appellant denied a fair trial where the Commonwealth failed to disclose a witness statement from Tamira Stallworth who told police "she saw the entire shooting" and that the perpetrator wore a "black mask," and further remained silent when Officer John Thomas testified falsely that Stallworth claimed not to have seen the shooting, in violation of the

_____

[2] The PCRA court did not order the filing of a Rule 1925(b) statement.

Fourteenth Amendment to the United States Constitution and Article 1, §§ 1 and 26 of the Pennsylvania Constitution?

5. Was Appellant denied a fair trial where the Commonwealth failed to disclose that Shalik Fogle first identified Andrew Ware, Appellant's brother, and not Appellant, as the perpetrator, in violation of the Fourteenth Amendment to the United States Constitution and Article 1, §§ 1 and 26 of the Pennsylvania Constitution?

6. Was Appellant denied a fair trial where the Commonwealth failed to disclose that Shalik Fogle was an FBI informant in violation of the Fourteenth Amendment to the United States Constitution and Article 1, §§ 1 and 26 of the Pennsylvania Constitution?

7. Must the matter be remanded because the lower court erred and abused its discretion in denying a hearing, notwithstanding the Commonwealth agreed to a hearing as to at least one claim, and further erred by failing to give the required notice of intent to dismiss as to [Issues 5 and 6]?

8. Is Appellant entitled to relief because of the cumulative effect of the errors committed at trial?

Appellant's Brief at 1-2.

"On appeal from the denial of PCRA relief, our standard of review is whether the findings of the PCRA court are supported by the record and free of legal error." *Commonwealth v. Abu-Jamal*, 833 A.2d 719, 723 (Pa. 2003) (citation omitted). "We view the findings of the PCRA court and the evidence of record in a light most favorable to the prevailing party." *Commonwealth v. Mason*, 130 A.3d 601, 617 (Pa. 2015) (citation omitted).

To prevail on a claim of ineffective assistance of counsel, a petitioner must plead and prove: (1) that the underlying issue is of arguable merit; (2) that counsel had no reasonable strategic basis for the action or inaction; and

- 5 -

(3) that counsel's error prejudiced the petitioner, such that the outcome of the underlying proceeding would have been different but for counsel's error. ***Commonwealth v. Spotz***, 84 A.3d 294, 311-12 (Pa. 2014). We presume that counsel was effective, and the petitioner bears the burden of proving otherwise. ***Id.*** at 311. A petitioner's failure to prove any of the three prongs is fatal to the petition. ***Id.***

Before considering the merits of Appellant's issues, we first address the timeliness of his petition, recognizing that neither this Court nor the PCRA court has jurisdiction to consider the merits of an untimely PCRA petition. ***See Commonwealth v. Spotz***, 171 A.3d 675, 678 (Pa. 2017). To be timely, a PCRA petition, including a second or subsequent petition, must be filed within one year of the date the judgment of sentence becomes final. ***See*** 42 Pa.C.S.A. § 9545(b)(1). As stated above, our Supreme Court denied Appellant's petition for allowance of appeal on direct appeal on November 18, 2014. He did not seek certiorari in the United States Supreme Court. Therefore, his judgment of sentence was final ninety days later, on February 16, 2015. ***See*** Trial Court Opinion, 5/10/21, at 5. Consequently, Appellant had until February 16, 2016 to file a timely petition. The instant petition, his second, was filed on July 24, 2020, nearly four and a half years after the time for filing a petition expired. Appellant's petition is facially untimely. ***Id.***

The PCRA court recognized that claims in otherwise untimely PCRA petitions may be considered if the petitioner alleges and proves one of the

three exceptions identified in 42 Pa.C.S.A. § 9545(b)(1)(i-iii)—*i.e.*, governmental interference, a newly-discovered fact, or a new constitutional right—in a petition filed within one year of the time the claim first could have been presented. Here the claims raised in Appellant's first four issues on appeal were asserted in his July 24 and November 4, 2020 petitions. Appellant contends these issues fall under the governmental interference and newly-discovered facts exceptions. The claims raised in his fifth and sixth issues on appeal were asserted in an April 27, 2021 supplemental petition. Plaintiff contends these issues also fall under the governmental interference and newly-discovered fact exceptions.

In its opinion, the PCRA court acknowledged that the Commonwealth voluntarily provided exculpatory information relating to misconduct by Detective Nordo and Officer Ortiz (with regard to Issues 1 and 2) on July 26, 2019 and July 1, 2020, respectively. PCRA Court Opinion, 5/10/21, at 6. Finding that Appellant could not have reasonably uncovered the underlying facts with respect to the alleged misconduct, Appellant timely raised these claims in his July 24, 2020 petition. *Id.* Similarly, Appellant met the newly-discovered fact exception regarding B.D.'s hospital-bed identification (Issue 3) because evidence relating to the circumstances under which B.D. identified Appellant from a photo array were unknown to Appellant, and not discoverable through the exercise of ordinary diligence, until August 22, 2020, when B.D. submitted an affidavit. *Id.* at 8. Further, Appellant satisfied both the

- 7 -

governmental interference and newly-discovered fact exceptions regarding an exculpatory statement allegedly made by Tamira Stallworth (Issue 4) because the information was in the homicide file first provided to Appellant's counsel on September 30, 2020, and Appellant could not have discovered that information through the exercise of ordinary diligence prior to that time. *Id.* at 8-9.

The PCRA court also determined that Appellant satisfied the governmental interference and newly-discovered fact exceptions relating to the two claims involving Shalik Fogle (Issues 5 and 6) raised in his April 27, 2021 supplemental petition. The court determined that Appellant could not have reasonably discovered the information until the Commonwealth disclosed the contents of its homicide file on September 30, 2020. *Id.* at 9-10.[3]

We find that the PCRA court's factual findings regarding timeliness are supported by the record and that its conclusions regarding satisfying the PCRA timeliness exceptions are free of legal error. Therefore, the PCRA court had jurisdiction to consider the merits of those claims.

_____

[3] Although the court found that time-bar exceptions applied to Appellant's fifth and sixth issues, both of which were first raised in Appellant's April 2021 supplemental petition, the court later concluded the issues were waived because Appellant did not seek leave to amend his petition. *See* PCRA Court Opinion, 5/10/21, at 20. As will be discussed herein, the court ultimately determined that the claims lacked merit, even if they had been properly preserved. *Id.* at 21.

Turning to the merits of Appellant's first six issues, the PCRA court noted that each of Appellant's claims involved after-discovered evidence of police misconduct that was previously withheld in violation of **Brady**.[4] The court recognized that

> [i]n order to obtain relief based on after-discovered evidence, a petitioner must show that the evidence: (1) could not have been obtained prior to the conclusion of trial by the exercise of reasonable diligence; (2) is not merely corroborative or cumulative; (3) would not be used solely to impeach the credibility of a witness; and, (4) would likely result in a different verdict if a new trial were granted. **Commonwealth v. Williams**, 215 A.3d 1019, 1024 (Pa. Super. 2019) (citing **Commonwealth v. Pagan**, 950 A.2d 270, 292 (Pa. 2008)).

PCRA Court Opinion, 5/10/21, at 10. Having found that the information relating to Appellant's issues could not have been obtained prior to 2020, the first prong of the test is satisfied. Therefore, we shall turn our focus to the remaining elements necessary to obtain relief with respect to each of Appellant's claims.

**Issue 1 – Detective Nordo**

Appellant argues he was denied a fair trial because the Commonwealth failed to disclose that Detective Nordo, in unrelated cases, had sexually assaulted, intimidated, and threatened witnesses, coercing them into giving

---

[4] "A **Brady** violation comprises three elements: (1) suppression by the prosecution; (2) of evidence, whether exculpatory or impeaching, favorable to the defendant; and, (3) to the prejudice of the defendant." PCRA Court Opinion, 5/10/21, at 11 (citing **Commonwealth v. Donoughe**, 243 A.2d 980, 984-85 (Pa. Super. 2020)).

false testimony. With respect to Appellant's case, Appellant alleges that Detective Nordo coerced Shalik Fogle into identifying Appellant as the shooter, "specifically by pacing around the interview room and confronting Fogle three times, asking him whether he was ready to tell the truth." PCRA Court Opinion, 5/10/21, at 12. Appellant argues that Fogle had previously represented to investigators that he could not identify the shooter because the shooter was masked and wearing a hoodie. Nevertheless, Fogle did identify Appellant as the shooter in his interview with Detective Nordo. The detective's behavior, he contends, "was consistent with his pattern and practice of abuse that resulted in indictment back in 2019." *Id.*

Rejecting this claim, the PCRA court explained:

[This] claim must fail because [Appellant] fails to establish a nexus between Nordo's alleged misconduct and Fogle's supposedly false statement. Fogle does not allege that Nordo coerced him or engaged in any sexual misconduct in order to secure a statement. Instead, Fogle states that he provided false testimony to receive favorable treatment on his pending drug offenses. That claim, even if believed, is unrelated to any behavior by Nordo that would comport with the revealed allegations of sexual coercion or misconduct involving witnesses in unrelated matters.

*Id.*

The court acknowledged Fogle's trial testimony that investigators did not make any promises to him for his testimony. Further, he "cannot establish that Detective Nordo's alleged misconduct in other matters somehow influenced Fogle's behavior in this case, or that it would even be relevant to Fogle's testimony. Instead Fogle provides nothing more than an unreliable

- 10 -

recantation of his trial testimony, which is insufficient to overturn the jury's verdict." *Id.* at 13 (citations omitted).[5] We agree with the PCRA court that Appellant failed to establish any nexus between Detective Nordo's misconduct in unrelated matters and Fogle's allegedly false statement. Because the evidence would not likely result in a different verdict if a new trial were granted, Appellant's claims regarding Detective Nordo do not provide any basis for relief.

**Issue 2 – Officer Ortiz**

In his second issue, Appellant contends he was denied a fair trial because trial counsel was ineffective for failing to discover that Officer Angel Ortiz—in an unrelated case—falsified police reports, mishandled evidence, and conspired with another officer to defraud the court by submitting a materially false affidavit of probable cause. Appellant's assertion stems from the incident leading to Appellant's arrest, two months after the murder, when Officer Ortiz

---

[5] Further support for finding Fogle's July 2020 statement constituted "nothing more than unreliable recantation of his trial testimony" can be found in the trial testimony. When Fogle was asked if he remembered talking with FBI agent Serotta upon his arrest a week after the murder, he stated that he did remember Serotta. N.T., Trial, 3/19/13, at 184. Yet, when asked if he remembered homicide detectives Nordo and Jenkins, he answered that he did not. *Id.* at 184. However, as Commonwealth Exhibits 12 and 13 reveal, Appellant had already identified Appellant as the shooter in his interview with Agent Serotta on April 26, 2011 before being transferred to the Philadelphia Police Department where he gave a signed statement to Detectives Nordo and Jenkins on April 27, 2011, again identifying Appellant as the shooter. Any suggestion that Detective Nordo somehow coerced him into making an identification that he had already made to an FBI agent strains credulity.

witnessed Appellant dispose of two firearms, neither of which proved to be the murder weapon.  The PCRA court considered the three prongs of the **Pierce**[6] test required to prove ineffectiveness, *i.e.*, that the underlying claim has arguable merit; that counsel lacked a reasonable basis for his action/inaction, and that prejudice resulted such that a different result was reasonably probable absent counsel's action/inaction, and concluded that Appellant's claim did not merit relief.  The court reasoned that Appellant did not contest his possession of the firearms in question and determined the related evidence would be used merely to impeach the officer's credibility.  Moreover, the alleged misconduct by the officer in the instant matter was completely dissimilar to the alleged misconduct in an unrelated narcotics case.  Further, Appellant "fails to establish that Ortiz engaged in a pattern or practice of misconduct or testified falsely in this matter."  PCRA Court Opinion, 5/10/21, at 15.

Because the evidence would be used solely to impeach the testimony of Officer Ortiz, and because Appellant failed to establish the likelihood of a different outcome at trial had counsel known of and cross-examined Ortiz on his prior instance of misconduct, Appellant is not entitled to relief on his second issue.  Appellant's second issue fails.

**Issue 3 – B.D.'s hospital-bed identification of Appellant**

---

[6] **Commonwealth v. Pierce**, 527 A.2d 973, 975 (Pa. 1987).

In his third issue, Appellant asserts he was denied a fair trial because the Commonwealth failed to disclose it coached B.D.'s alleged hospital-bed identification of Appellant as the shooter by, *inter alia*, suggesting the perpetrator was in the "top row" of the photo array. At trial, B.D. testified that he remembered the police coming to his hospital room eight days after the shooting, remembered that they showed him photographs of eight men he did not know, and remembered being asked if he could identify the shooter from the photo array. N.T., Trial, 3/20/13, at 165-67. He explained that he picked out Appellant from the array because he was "pretty sure" that was the shooter. *Id.* at 167. He stated he was not on any medication at the time but did not recall when he had last been given any medication before the detectives arrived. *Id.* at 179-80. He acknowledged that days before trial, two years after the shooting, he was unable to identify Appellant from a lineup of six men, noting his memory was not as good as it was eight days after the shooting. *Id.* at 168-70. Appropriately, the trial court delivered a cautionary *Kloiber*[7] instruction regarding witness identification. N.T., Trial, 3/21/13, at 196-98.

In August 2020, B.D. signed an affidavit alleging that he was under the influence of painkillers and other drugs when he identified Appellant from the

_____

[7] *Commonwealth v. Kloiber*, 106 A.2d 820 (Pa. 1954).

photo array. He also indicated that the officers present for the in-hospital identification told B.D. that the suspect was not in the bottom row of pictures, thus eliminating four of the eight individuals in the photo array.

The PCRA court rejected Appellant's contention that he was deprived of a fair trial based on the Commonwealth's actions, finding that B.D.'s 2020 recantation was unreliable and would not likely alter the outcome of the trial. Again, as the trial court recognized, recantation testimony is extremely unreliable. *See, e.g., Commonwealth v. Small*, 189 A.3d 961, 977 (Pa. Super. 2018). We find no error in the court's rejection of Appellant's claim relating to B.D.'s hospital-bed identification and subsequent recantation.

**Issue 4 – Tamira Stallworth**

In his fourth issue, Appellant argues he was denied a fair trial because the Commonwealth failed to disclose a handwritten note contained in the homicide file turned over to Appellant's counsel at the end of September 2020. The note, possibly written by Police Officer Christine Valentine, indicates that Tamira Stallworth "approached P/O Thomas [and] said she saw entire shooting. Described about 6'2 [*sic*] wearing black mask." PCRA Court Opinion, 5/10/21, at 18; Commonwealth Brief at Exhibit C. In different handwriting, the name Tamira Stallworth appears over a redacted entry that likely indicated an address for Ms. Stallworth. Regarding Ms. Stallworth, Appellant contends the Commonwealth improperly remained silent when

testifying Officer John Thomas stated that Stallworth claimed not to have seen the shooting.

Officer Valentine testified at trial but did not identify any witnesses to the shooting, explaining that "[t]he back of [Yates'] head was fully exposed," so she was holding his head "so the brain matter doesn't come out." N.T., Trial, 3/19/13, at 62. At the same time, she was trying to assure B.D. that he was not going to die. *Id.* Once Yates was taken from the scene to the hospital, she also left, after providing information to other officers as to what she had seen. *Id.*

Officer Thomas testified that three women were present at the scene and that he spoke with them and recorded their names in his crime scene log (Commonwealth Trial Exhibit 7) but explained that they reported not witnessing the shooting. *Id.* at 113-14. In his statement (Commonwealth Exhibit 8), he identified two women as tending to the victim. When he was asked if there was any particular reason his statement listed two women while his crime scene log included three, Ms. Stallworth being the third, he responded, "No." *Id.* at 118-19.

The PCRA court explained:

[Appellant] fails to provide an affidavit outlining the testimony that Stallworth would provide at an evidentiary hearing. When pressed about this during his March 25, 2021 argument before this court, PCRA counsel admitted that he and his investigator were unable to get into contact with Stallworth, and could not secure an affidavit outlining the substance of her proposed testimony. Without that, any claim involving Stallworth's prospective testimony is based purely on speculation and

- 15 -

inadmissible hearsay, precluding it from forming a basis for PCRA relief.

PCRA Court Opinion, 5/10/21, at 18-19.[8]

The PCRA court convened an additional hearing on May 6, 2021. The transcript from that hearing does not include any mention of Ms. Stallworth or attempts to locate her. Rather, the focus was on Appellant's request for an evidentiary hearing to address issues raised in a supplemental PCRA petition filed on April 27, 2021. Counsel acknowledged that he did not seek leave to amend before filing the supplemental petition. He nevertheless advanced an argument that an evidentiary hearing was appropriate to resolve a factual issue raised in the supplemental petition involving a supposed identification by Shalik Fogle of Andrew—rather than Andre—Ware as the shooter, as will be discussed herein in relation to Appellant's fifth issue.

With respect to Ms. Stallworth, because Appellant did not produce any information that would likely result in a different verdict in a new trial, the

_____

[8] At the March 25, 2021 hearing, counsel for the Commonwealth postulated that the witness identified on the crime scene log as "Tamira Stallworth" gave a false name and address to Officer Thomas, noting that the given address is not an actual street address or zip code in Philadelphia, although there is a such an address in Lansdale, Pennsylvania. Counsel for Appellant advised that his investigator had learned of, but had not yet located, a person named Tamira with the same date of birth as indicated on the crime scene log. Efforts to locate her were continuing. In light of that fact, the PCRA court announced it would be issuing a Rule 907 notice but would allow Appellant until May 6, 2021 to pursue its investigation regarding the witness.

PCRA court correctly concluded that Appellant's fourth issue fails for lack of merit.

**Issue 5 – Shalik Fogle's "identification" of Andrew—not Andre—Ware**

In his fifth issue, Appellant contends he was denied a fair trial because the Commonwealth suppressed evidence indicating that Fogle identified Appellant's brother, Andrew, as the shooter. The PCRA court found the claim, which was first raised in Appellant's April 27, 2021 supplemental PCRA petition, waived. The court cited counsel's concession at the May 6, 2021 PCRA hearing that counsel did not seek leave to file an amended petition. PCRA Court Opinion, 5/10/21, at 20.

Even if the claim were properly preserved, the PCRA court found that it lacked merit. Noting that Appellant attached to his supplemental petition an undated confidential human source ("CHS") statement allegedly provided by Fogle, the court explained:

> The CHS statement itself does not identify Fogle as the author of its contents, and [Appellant] fails to provide an affidavit from Fogle indicating that he offered the statement to federal investigators. While Fogle did provide the petitioner an affidavit on July 21, 2020, he does not mention serving as an FBI informant, nor does he claim that he provided the FBI a statement identifying Andrew Ware as the shooter. Because of this, the undated statement is nothing more than inadmissible hearsay, and could not be offered as evidence at an evidentiary hearing, let alone a new trial. [Appellant] fails to meet his burden.

*Id.* at 21.

We find no error in the court's determination that the claim is waived, or in its determination that the claim lacks merit, even if it had been

preserved. Moreover, Appellant acknowledges that Andrew Ware was incarcerated on the date of the shooting. Appellant's Brief at 26 (referencing a court summary dated April 22, 2011—two days after the shooting—that Andrew Ware had been in custody since December of 2010). Further, when Fogle provided his statement to police on April 27, 2011, he referred to Appellant as "Onnie," and indicated that while he knew Onnie for about 10 years, he did not know his real name. *See* N.T., Trial, 3/19/13, at 204-05; Commonwealth Trial Exhibit 12. Finally, the undated writing that is cited as referring to "Andrew" is in handwriting that does not clearly depict a "w" at the end of the name. *See* Commonwealth Brief, Exhibit D. For these reasons and those cited by the PCRA court, Appellant's fifth issue fails.

**Issue 6 – Shalik Fogle as FBI Informant**

In his sixth issue, Appellant contends he was denied a fair trial because the Commonwealth failed to disclose that Fogle was an FBI informant. The PCRA court found this claim was waived because it was first raised in Appellant's April 27, 2021 supplemental petition. Again, counsel did not seek leave to file an amended petition. Regardless, the court found the issue insufficient to warrant an order granting a new trial. The court explained:

> [Appellant] alleges that the Commonwealth withheld impeachment evidence demonstrating that Fogle was an FBI informant. As [Appellant] contends, this evidence would only be used for impeachment purposes, challenging the veracity of his statement identifying [Appellant] as the shooter. Because the evidence would only be used to impeach, it fails to meet the third-prong of the after-discovered evidence test for PCRA relief, and thus cannot solely form the basis for an evidentiary hearing or a

- 18 -

new trial. Moreover, Shalik Fogle recanted his identification at trial, and told the jury that he lied when he implicated [Appellant] to detectives. N.T. 3/19/2013, at 238. As such, any impeachment evidence concerning his status as an FBI informant would merely be cumulative or corroborative of his own recantation. The claim thus fails to meet the second prong required to obtain relief pursuant to an after discovered evidence claim.

PCRA Court Opinion, 5/10/21, at 21. We find no error in the PCRA court's rejection of Appellant's sixth issue. Appellant is not entitled to a new trial based on his contention that Fogel was an FBI informant.

**Issue 7 – Denial of Evidentiary Hearing**

In his seventh issue, Appellant contends this matter must be remanded because the PCRA court erred and abused its discretion by denying an evidentiary hearing. We reject his contention.[9]

"With respect to the PCRA court's decision to deny a request for an evidentiary hearing, or to hold a limited evidentiary hearing, such a decision is within the discretion of the PCRA court and will not be overturned absent an abuse of discretion." **Mason**, 130 A.3d at 617 (citation omitted). In

---

[9] In his issue as outlined in his statement of questions, Appellant also alleged error for failure to give required notice of its intent to dismiss Appellant's fifth and sixth issues, both of which involved Shalik Fogle. Appellant does not address this allegation in the argument section of his brief. Perhaps more importantly, he fails to cite any authority for his assertion that the PCRA court erred by denying an evidentiary hearing. The lack of citation to authority, in and of itself, defeats Appellant's evidentiary hearing claim. **See Commonwealth v. Scott**, 212 A.3d 1094, 1107 (Pa. Super. 2019) (citing **Commonwealth v. Russell**, 209 A.3d 419, 429-30 (claim waived for failure to cite any authority in support of position)).

***Commonwealth v. Maddrey***, 205 A.3d 323 (Pa. Super. 2019), this Court reiterated:

> It is well settled that "[t]here is no absolute right to an evidentiary hearing on a PCRA petition, and if the PCRA court can determine from the record that no genuine issues of material fact exist, then a hearing is not necessary." ***Commonwealth v. Jones***, 942 A.2d 903, 906 (Pa. Super. 2008). "[T]o obtain reversal of a PCRA court's decision to dismiss a petition without a hearing, an appellant must show that he raised a genuine issue of fact which, if resolved in his favor, would have entitled him to relief, or that the court otherwise abused its discretion in denying a hearing." ***Commonwealth v. Hanible***, 612 Pa. 183, 30 A.3d 426, 452 (2011).

***Id.*** at 328. Here, the PCRA court also recognized that a petitioner requesting an evidentiary hearing is to include a certification signed by each intended witness, setting forth the witness's name, address, date of birth, and the substance of the testimony to be presented. In the event a witness's signature cannot be obtained, the petitioner or counsel must sign a certification with that same information. PCRA Court Opinion, 5/10/21, at 11 (citing ***Commonwealth v. Grayson***, 212 A.3d 1047, 1051-52 (Pa. Super. 2019) and 42 Pa.C.S.A. § 9545(d)(i)-(ii)).

With regard to Appellant's first four issues, the PCRA court determined that Appellant satisfied the governmental interference and newly-discovered fact exceptions to the PCRA's time bar and, therefore, considered those issues on the merits. The court found sufficient support in the record to reject each of these claims without the need for an evidentiary hearing. In addition, with respect to the second and fourth issues, involving Officer Ortiz and the

mysterious Ms. Stallworth, the court specifically found that Appellant failed to provide a certification or affidavit summarizing the substance of either witness's testimony, if they were to be called at an evidentiary hearing. PCRA Court Opinion, 5/10/21, at 16, 18-19.

Relative to Appellant's fifth and sixth issues, both of which involved Shalik Fogel, Appellant asserted that the documents supporting those two claims could not have been discovered prior to September 30, 2020, when the Commonwealth disclosed the contents of its homicide file. While the court found that each claim could survive the PCRA's time bar under the governmental interference and newly-discovered fact exceptions, the court nevertheless found they were waived because they were first raised in a supplemental petition filed on April 27, 2021 for which counsel did not seek leave to amend.[10] However, even if they were preserved, the undated CHS statement did not identify Fogel as the author of its contents and Appellant did not provide an affidavit from Fogel, other than Fogel's July 21, 2020 affidavit that did not mention serving as an FBI informant or indicate that he provided a statement to the FBI identifying Andrew Ware as the shooter. Nor did Appellant provide an affidavit or certification from an FBI agent indicating that Fogel was the source of information for the CHS statement in which

---

[10] Appellant did not explain why those claims—both of which were premised on information located in the homicide file disclosed to Appellant on September 30, 2020—were not raised in the corrected petition filed on November 4, 2020, which the PCRA court did consider.

Andrew Ware was purportedly identified as the shooter. "Instead, [Appellant] wants this court to assume that Fogle was the confidential FBI informant in the absence of any information presented in support of such an allegation. Ultimately, the claims are too undeveloped to support an order granting relief." *Id.* at 22.

Appellant's assertion of PCRA court error for dismissing his petition without an evidentiary hearing lacks merit. We further note the court's observation that Appellant did not raise any new issues in his response to the court's Rule 907 notice of intent to dismiss. Although the notice issued on March 25, 2021 directed Appellant to file a response within 20 days, Appellant did not file a response until May 5, 2021, "more than twenty days after the period to respond to [the] court's 907 notice expired." *Id.* at 22. While it is possible counsel was operating under the impression that the court's allowance of additional time to develop information relating to Ms. Stallworth implied an extension for filing a response to the notice until that date, the court clearly did not intend to provide an extension. Nevertheless, the court did consider the response and found it did not warrant amplification of matters already addressed, stating, "No further discussion is warranted. [Appellant] is not entitled to an evidentiary hearing and his claims fail." *Id.* Finding no

error in the PCRA court's conclusion in this regard, we conclude Appellant's claim of entitlement to an evidentiary hearing fails.[11]

**Issue 8 – Cumulative Error**

In his eighth and final issue, Appellant argues he is entitled to relief because of the cumulative effect of the alleged trial errors. However, as the Commonwealth observes, if each of Appellant's claims is meritless, any claim of cumulative error is likewise meritless. Commonwealth Brief at 34 (citing **Mason**, 130 A.3d at 674 (where all claims are meritless, no cumulative prejudicial effect could have attained)). Because we have concluded that the PCRA court correctly determined that Appellant's claims lack merit and/or were waived, Appellant's assertion of cumulative error must similarly fail.

Order affirmed.

---

[11] The Commonwealth acknowledged it "would have preferred an evidentiary hearing to clear up exactly who wrote the note and why there was a criminal history for [Appellant's] brother in the detective's file[.]" Commonwealth Brief at 16. However, we find no error in the PCRA court's denial of an evidentiary hearing, not only because the PCRA court found the claim waived but also because Fogle admitted he knew Appellant only as "Onnie" and did not even know Appellant's given name. Therefore, Fogle would not have been in a position to identify him to the detective as either Andrew *or* Andre.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/24/2022